| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>TRIBUNAL DE APELACIONES<br>PANEL VI | | |
| JOSEPH MANGUM<br><br>Parte Peticionaria<br><br><br>v.<br><br><br><br>ROSEMARY SOTO ROSADO<br><br>Parte Recurrida | TA2026CE00741 | *Certiorari, acogido como Apelación*<br>procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.:<br>JU2025RF00018<br><br><br><br>Sobre:<br>Custodia-Monoparental o Compartida, Divorcio-Ruptura Irreparable |

Panel integrado por su presidenta, la Jueza Romero García, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 22 de junio de 2026.

Compareció ante este Tribunal la parte apelante, el Sr. Joseph Mangum (en adelante, "señor Mangum" o el "Apelante"), mediante un recurso de *Certiorari* presentado el 10 de junio de 2026. Nos solicitó la revocación de la *Resolución nunc pro tunc* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, el "TPI"), el 23 de abril de 2026, enmendada el 4 de mayo de 2026 y notificada y archivada en autos el 11 de mayo de 2026.[1] Dicho dictamen fue objeto de una solicitud de reconsideración interpuesta por el Apelante, la cual fue denegada por el TPI mediante *Orden* con fecha de 29 de mayo de 2026, por haberse presentado fuera del término dispuesto en la Regla 47 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 47.

Toda vez que se acude ante este foro para impugnar un dictamen relacionado con la custodia de un menor de edad, acogemos el presente recurso como una apelación, pero mantenemos el alfanumérico asignado por la Secretaría de este Tribunal.[2]

---

[1] Evaluada la *Resolución nunc pro tunc*, advertimos que realmente se trata de una *Resolución enmendada*, pues la misma modifica sustancialmente el plan de custodia.

[2] *Véase*, Figueroa v. Del Rosario, 147 DPR 121, 128 (1998).

Por los fundamentos que expondremos a continuación, se *revoca* el dictamen apelado.

**I.**

El caso ante nos se originó con la presentación de una "**Demanda**" el 3 de febrero de 2025, mediante la cual el señor Mangum solicitó al TPI que decretara roto y disuelto el matrimonio habido entre él y la Sra. Rosemary Soto Rosado (en adelante, "señora Soto Rosado" o la "Apelada") por la causal de ruptura irreparable y otorgara al Apelante la custodia y patria potestad compartida del menor AFMS.

El 24 de junio de 2025, el TPI dictó *Sentencia* en la cual decretó el divorcio, otorgó custodia del menor AFMS a la Apelada y dispuso que la patria potestad sería compartida. Consecuentemente, suspendió las relaciones paternofiliales hasta tanto el Departamento de Familia propusiera un plan según la *Resolución* del caso OPM2025-0030, relacionado con una orden de protección que solicitó la señora Soto Rosado, y refirió el caso a la Unidad Social para los trámites pertinentes.

Posteriormente, el foro primario estableció un plan de relaciones filiales provisional mediante *Resolución* de 25 de noviembre de 2025, con el fin de que la Unidad Social pudiera emitir su informe en el caso. La trabajadora social finalmente asignada al caso, la Sra. Yaritza Figueroa Ortiz (en adelante, "señora Figueroa Ortiz" o la "TS"), rindió su "**Informe Social Forense**" el 9 de febrero de 2026. En él, detalló sus observaciones y conclusiones respecto a las relaciones filiales entre el menor AFMS y sus progenitores, al igual que consignó sus recomendaciones. En lo pertinente al recurso ante nuestra consideración, la señora Figueroa Ortiz concluyó que (1) la custodia compartida respondía al mejor interés del menor y (2) que los conflictos entre los progenitores no guardaban relación con la calidad del vínculo parental identificado.[3] Además, recomendó que:

1. La custodia y patria potestad de [AFMS] será compartida.

2. El plan custodio será el siguiente:
    **[AFMS] compartirá con el progenitor de jueves a lunes**. El lugar de búsqueda y entrega será en la escuela. Cuando [AFMS] no tenga clases, será entregado y recogido en el Walgreens de Juncos. La progenitora determinará si será ella o algún recurso familiar que entregará al menor.[4]

[. . .]

---

[3] SUMAC-TPI, Entrada Núm. 93, Anejo (Informe Social Forense, pág. 36).
[4] Íd. (énfasis omitido y suplido).

En desacuerdo con las determinaciones consignadas en el informe social, la Apelada presentó una "**Moción Solicitando que se aclare Recomendación de Informe Social y/o Impugnación**" en la cual se opuso al plan custodio propuesto. Solicitó que, previo a informar la prueba y método que utilizaría para impugnar el informe, el TPI ordenara a la TS a expresarse sobre la recomendación de que el menor permaneciera con el Apelante de jueves a lunes. Así, expresó que "nos surge la interrogante de si se trata de todas las semanas de jueves a lunes".[5] El TPI dictó *Orden* a tales efectos y la TS aclaró, mediante "**Moción Informativa en Cumplimiento de Orden**" de 14 de abril de 2026, que "la recomendación de jueves a lunes es de manera alternada".[6] La señora Soto Rosado compareció mediante "**Moción sobre Aclaración de Recomendación de Informe Social y Corrección de Epígrafe**", el 20 de abril de 2026, y se allanó a las recomendaciones del informe, según aclaradas por la TS. En específico, indicó que "no existe reparo al plan filial/custodio recomendado con el progenitor de jueves a lunes en semanas alternas".[7]

Esto así, el TPI emitió *Resolución* mediante la cual presuntamente acogió **íntegramente** las recomendaciones contenidas en el informe social y ordenó:

1. Custodia y patria potestad

   • Se concede la custodia compartida del menor [AFMS] entre ambos progenitores.

2. Plan de custodia compartida

   • [AFMS] **permanecerá con el progenitor desde los jueves hasta los lunes**. El lugar de entrega y recogido será la escuela. Cuando el menor no tenga clases, la entrega y el recogido se realizarán en el Walgreens de Juncos. La progenitora determinará si será ella o un recurso familiar quien entregue al menor.[8]

[. . .]

El mismo día, la Apelada presentó una "**Moción de Reconsideración**", en la cual solicitó al foro *a quo* a corregir la *Resolución* emitida, toda vez que no reflejaba la aclaración que hizo la TS en cuanto al plan de custodia. Por su parte,

---

[5] <u>SUMAC-TPI</u>, Entrada Núm. 100, ¶5, pág. 1.
[6] <u>SUMAC-TPI</u>, Entrada Núm. 105, ¶4, pág. 1.
[7] <u>SUMAC-TPI</u>, Entrada Núm. 106, ¶3, pág. 1 (énfasis omitido).
[8] SUMAC-TPI, Entrada Núm. 109 (énfasis omitido y suplido).

el 30 de abril de 2026, el señor Mangum presentó una "**Moción en Oposición a Interpretación y/o Modificación del Plan de Custodia y Solicitud de Reafirmación de Custodia Compartida Equitativa**". En ella, se opuso a que el TPI enmendara la *Resolución* previamente dictada, puesto que entendía que tal proceder no era una mera aclaración, sino una modificación sustancial del esquema de custodia compartida recomendado en el informe social y adoptado por el tribunal. De igual forma, sostuvo que limitar su participación a fines de semanas alternos resultaba inconsistente con el informe social, las expresiones del menor y con el principio de custodia compartida adoptado por el foro apelado. El TPI, luego de evaluar ambas mociones, enmendó *nunc pro tunc* su *Resolución* original, la cual finalmente se notificó el 11 de mayo de 2026.[9]

Insatisfecho, el Apelante presentó una "**Moción de Reconsideración y Solicitud de Entrevista en Cámara del Menor**" el 29 de mayo de 2026. Sin embargo, por haberla presentado fuera del término dispuesto para solicitar reconsideración, el TPI denegó la misma.

Aún inconforme, el 10 de junio de 2026, el señor Mangum presentó el recurso que nos ocupa mediante el cual imputó al TPI la comisión de los siguientes errores:

PRIMER ERROR: Erró el Tribunal al adoptar expresamente las recomendaciones del Informe Social Forense y posteriormente modificar materialmente la recomendación custodial mediante la adición de la frase "semanas alternas", sin explicación ni fundamentación alguna en la resolución. Del expediente disponible al peticionario no surge explicación específica que justifique la incorporación de la frase "semanas alternas" a la recomendación original contenida en el Informe Social Forense.

SEGUNDO ERROR: Erró el Tribunal al incorporar la frase "semanas alternas" sin identificar hallazgo específico del Informe Social Forense que justificara dicha modificación.

TERCER ERROR: Erró el Tribunal al no atender adecuadamente las preferencias consistentemente expresadas por el menor durante el proceso evaluativo.

CUARTO ERROR: Erró el Tribunal al no considerar adecuadamente que el propio Informe Social Forense identificó la separación prolongada entre padre e hijo como la principal fuente de tristeza, coraje, sentimientos de soledad y malestar emocional del menor, documentándose además una mejoría emocional significativa tras el restablecimiento de las relaciones filiales.

QUINTO ERROR: Erró el Tribunal al limitar significativamente la participación paterna pese a que el expediente contiene hallazgos

---

[9] *Véase*, nota al calce núm. 1.

favorables respecto a la relación padre-hijo y no contiene hallazgos específicos de riesgo, temor o perjuicio al menor que justifiquen dicha limitación.

SEXTO ERROR: Erró el Tribunal al denegar la reconsideración sin atender de forma independiente la solicitud de entrevista en cámara del menor.

El 22 de junio de 2026, la señora Soto Rosado presentó su "**Alegato en Oposición a Expedición de *Certiorari***".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Es norma conocida que los casos de familia están permeados del más alto interés público y que los mismos están dotados de un carácter *sui* generis. Figueroa v. Del Rosario, 147 DPR 121, 128 (1998). El Tribunal Supremo de Puerto Rico ha afirmado que, de conformidad con las prerrogativas que derivan del poder de *parens patriae* del Estado, el tribunal ostenta amplias facultades para ejecutar las medidas que estime necesarias para proteger al menor. Jusino González v. Norat Santiago, 211 DPR 855, 865 (2023). Por ello, los tribunales deben, exclusivamente, garantizar y proteger el mejor interés y bienestar de ese menor. Peña v. Peña, 164 DPR 949, 958 (2005). A esos efectos, ante una determinación sobre custodia, los foros judiciales estamos llamados a realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante su consideración. Jusino González v. Norat Santiago, *supra*, pág. 864; Ortiz v. Meléndez, 164 DPR 16, 26-27 (2005).

Al respecto, el Artículo 604 del Código Civil establece los siguientes criterios a considerar en la adjudicación de custodia:

(1) La salud mental de ambos progenitores y de los hijos;

(2) el nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores;

(3) si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar;

(4) la capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras;

(5) el historial de cada progenitor en la relación con sus hijos;

(6) las necesidades específicas de cada uno de los hijos menores cuya custodia se solicita;

(7) la relación del hijo con sus progenitores, sus hermanos y otros miembros de la familia;

(8) la capacidad, disponibilidad y compromiso de los progenitores de asumir la responsabilidad de criar los hijos conjuntamente;

(9) la razón o los motivos de los progenitores para solicitar la custodia compartida;

(10) si la profesión u oficio que ejercen los progenitores no es un impedimento para ejercer una custodia compartida;

(11) si la ubicación y distancia entre las residencias de los progenitores perjudica la educación del hijo;

(12) la comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos; y

(13) cualquier otro criterio que pueda considerarse para garantizar el interés óptimo de los hijos. 31 LPRA sec. 7283.

Cónsono con lo anterior, la Ley Núm. 223-2011, según enmendada, conocida como la "Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia", dispone en su Artículo 7 que, al considerarse una solicitud de custodia en la que surjan controversias entre los progenitores, el tribunal referirá el caso al trabajador social de relaciones de familia, quien realizará una evaluación y rendirá un informe con sus recomendaciones. 32 LPRA sec. 3185. Tanto la recomendación del trabajador social, como la determinación de custodia del Tribunal tendrán como propósito garantizar el mejor bienestar del menor. 32 LPRA sec. 3186. Por último, resulta importante resaltar que las determinaciones de custodia no constituyen cosa juzgada, toda vez que éstas están sujetas a la revisión judicial si existe un cambio en las circunstancias que así lo justifiquen. Figueroa v. Del Rosario, *supra*. La determinación que emite el foro para resolver la modificación de la custodia, por cambios en las circunstancias, implica una adjudicación en los méritos y, como tal, constituyen una nueva sentencia de la cual puede apelarse. Íd.

**B.**

Reiteradamente, nuestro Tribunal Supremo ha reconocido que los tribunales tienen la facultad inherente de reconsiderar sus determinaciones, ya sea porque una parte así lo ha solicitado o *motu proprio*, siempre que, al así hacerlo, todavía conserven jurisdicción sobre el caso. 4 LPRA sec. 24*o* (citado con aprobación en

Pueblo v. Román Feliciano, 181 DPR 679, 684 (2011); *véase, además*, Interior Developers v. Mun. de San Juan, 177 DPR 693 (2009)). La Regla 47 de Procedimiento Civil rige lo concerniente a la moción de reconsideración y a esos efectos dispone:

> La parte adversamente afectada por una orden o resolución del Tribunal de Primera Instancia podrá presentar, dentro del término de cumplimiento estricto de quince (15) días desde la fecha de la notificación de la orden o resolución, una moción de reconsideración de la orden o resolución.
>
> La parte adversamente afectada por una sentencia del Tribunal de Primera Instancia podrá presentar, dentro del término jurisdiccional de quince (15) días desde la fecha de archivo en autos de copia de la notificación de la sentencia, una moción de reconsideración de la sentencia.
>
> La moción de reconsideración debe exponer con suficiente particularidad y especificidad los hechos y el derecho que el promovente estima que deben reconsiderarse y fundarse en cuestiones sustanciales relacionadas con las determinaciones de hechos pertinentes o conclusiones de derecho materiales.
>
> La moción de reconsideración que no cumpla con las especificidades de esta regla será declarada "sin lugar" y se entenderá que no ha interrumpido el término para recurrir.
>
> Una vez presentada la moción de reconsideración quedarán interrumpidos los términos para recurrir en alzada para todas las partes. Estos términos comenzarán a correr nuevamente desde la fecha en que se archiva en autos copia de la notificación de la resolución resolviendo la moción de reconsideración.
>
> La moción de reconsideración se notificará a las demás partes en el pleito dentro de los quince (15) días establecidos por esta regla para presentarla ante el tribunal de manera simultánea. El término para notificar será de cumplimiento estricto. 32 LPRA Ap. V, R. 47.

Conforme dispone la regla, las partes cuentan con un término de quince (15) días desde la notificación del Tribunal para presentar una moción de reconsideración. Cuando lo que se solicita es la reconsideración de una sentencia, el término es de carácter jurisdiccional; mientras que cuando se solicita la reconsideración de una determinación interlocutoria –sea una resolución u orden–, el término es de cumplimiento estricto. Div. Empleados Públicos UGT v. CEMPR, 212 DPR 742, 749 (2023).

En cuanto a la distinción entre un término jurisdiccional y uno de cumplimiento estricto, nuestro más alto foro ha resaltado que incumplir dichos términos conlleva consecuencias distintas. Íd., pág. 751. Ante un término jurisdiccional, la presentación tardía implica "un defecto fatal que priva al tribunal

de la jurisdicción para atender el asunto". Íd.; *véase, además*, <u>Cruz Parrilla v. Depto. Vivienda</u>, 184 DPR 393, 403 (2012).

Incumplir con un término de cumplimiento estricto, sin embargo, no es un defecto fatal. En tal caso, dichos términos pueden extenderse o prorrogarse, siempre que la parte que presentó su reconsideración fuera de término demuestre justa causa por la cual deba concederse su solicitud. <u>Div. Empleados Públicos UGT v. CEMPR</u>, *supra*, pág. 751. Es por esto que, "a falta de justa causa, o ante excusas vagas y generales, los tribunales no gozan de discreción para prorrogar los términos de cumplimiento estricto". <u>Íd</u>.

**III.**

En el presente caso, el Apelante nos solicita la revocación de la *Resolución nunc pro tunc* del TPI, mediante la cual enmendó el plan de custodia previamente adoptado en su *Resolución* original.

Los primeros cinco señalamientos de error esgrimidos se encuentran íntimamente relacionados, por lo que se abordarán de manera conjunta en la discusión. En síntesis, el señor Mangum sostiene que el TPI erró al enmendar su *Resolución* inicial del 24 de abril de 2026 mediante *Resolución nunc pro tunc*, toda vez que dicha enmienda constituyó una modificación sustancial del plan de custodia. Asimismo, que erró al incorporar la frase "semanas alternas" sin identificar hallazgo específico en el informe social que justificara dicha modificación y que, en general, no atendió adecuadamente el mejor interés del menor.

Conforme adelantáramos en los acápites anteriores, ante una determinación sobre custodia, los foros judiciales estamos llamados a realizar un análisis **objetivo, sereno y cuidadoso de todas las circunstancias** presentes en el caso ante su consideración. Esto para atender y garantizar el interés óptimo del menor. Enfatizamos, además, que la determinación que emite un foro para resolver la modificación de la custodia implica una adjudicación en los méritos, por lo cual constituye una nueva sentencia de la cual puede apelarse.

Tras un análisis riguroso del expediente ante nuestra consideración, incluyendo la "**Demanda**", el "**Informe Social Forense**", la *Resolución* original y la *Resolución nunc pro tunc*, arribamos a la conclusión de que el TPI erró al emitir la *Resolución* enmendada de la cual se recurre. Nos explicamos.

La *Resolución* inicial, mediante la cual el tribunal apelado acogió íntegramente las recomendaciones del informe social, refleja un plan de custodia muy distinto al que forma parte de la *Resolución nunc pro tunc* posterior. La *Resolución* original precisa que el menor permanecerá con su padre "desde los jueves hasta los lunes", sin más. Por el contrario, y en virtud de una aclaración escueta de la trabajadora social en cuanto a sus recomendaciones, la *Resolución* recurrida dispone que el menor permanecerá con el progenitor "desde el jueves hasta el lunes semanas alternas".

Resulta evidente que añadir la frase "semanas alternas" altera sustancialmente el plan de custodia y, por consiguiente, los derechos del Apelante en cuanto a su relación paternofilial con el menor. A pesar de que la Apelada mostró oposición inicial a las recomendaciones de la TS, ella se allanó a las mismas una vez se "aclaró" que dicho plan sería de manera alternada. Cabe resaltar que la aclaración que hizo la trabajadora social respondía específicamente a la interrogante que planteó la Apelada, a saber "si se trata de todas las semanas de jueves a lunes", y que su moción informativa se limitó a mencionar que era "de manera alternada". Dicha interrogante, precisamente, resalta la brecha entre el plan de custodia recomendado y acogido por el TPI y el plan que se desprende de la *Resolución* enmendada que se dictó a raíz de una aclaración de la TS.

Por otro lado, surge del expediente que el señor Mangum presentó su oposición a que se enmendara la *Resolución* dictando custodia de manera alternada mediante su oportuna "**Moción en Oposición a Interpretación y/o Modificación del Plan de Custodia y Solicitud de Reafirmación de Custodia Compartida Equitativa**". Lo propio en ese momento, y distinto a lo que aquí ocurrió, habría sido que el TPI ordenara la celebración de una vista evidenciaria para evaluar los fundamentos de la oposición del Apelante, en cuanto a la manera en que la TS propuso que se llevaran a cabo las relaciones paternofiliales, y permitir que presentara prueba que apoyo a su argumento. Sin embargo, el foro *a quo* se limitó a emitir una *Orden* en la cual manifestó haber evaluado las mociones de ambas partes y procedió a enmendar la *Resolución* inicial para que coincidiera con la aclaración de la TS. Ante tal proceder, no nos queda duda de que se violentó el

debido proceso de ley del Apelante, luego de que éste presentara su oportuna objeción al nuevo plan de relaciones filiales que recomendó la TS.

Así pues, es forzoso concluir que la *Resolución nunc pro tunc* tuvo el efecto de modificar el plan de custodia previamente establecido y que resulta impropio que el reclamo del Apelante se haya adjudicado sin la celebración de una vista evidenciaria que permitiera determinar si existía justificación para el cambio realizado. Cuanto más, surge del expediente que ambas partes se opusieron al plan de custodia en momentos distintos, lo cual abona a la necesidad de celebrar una vista evidenciaria donde se resuelva la controversia ahora ante este Tribunal.

Por último, y en lo pertinente al sexto señalamiento de error, el Apelante aduce que erró el TPI al denegar su solicitud de reconsideración por no atender de forma independiente la solicitud de entrevista en cámara del menor. En ese particular, no le asiste la razón, toda vez que presentó la reconsideración fuera del término de cumplimiento estricto que dispone la Regla 47 de Procedimiento Civil, *supra*, para ello. Dado a que el Apelante no expuso justa causa por la cual procedía extender dicho término, el TPI no gozaba de discreción para prorrogarlo ni para atender la reconsideración en los méritos.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte del presente dictamen, se *revoca* la *Resolución* apelada. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Caguas, para encaminar los procedimientos hacia la celebración de una vista evidenciara en donde se pueda evaluar la oposición de la parte apelante a la modificación del plan de custodia. Ante tales circunstancias, se reestablece el plan de custodia provisional dispuesto por el TPI hasta tanto no se adjudique en los méritos la procedencia de los planteamientos esgrimidos por el Apelante, en cuanto a la modificación de las relaciones paterno filiales recomendada por la TS.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones